**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ROGER M. MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR REVIEW BOARD:[1]

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHEN M. COIL,[2] | ) | |
| | ) | |
| Appellant-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 93A02-1309-EX-747 |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, INTERNATIONAL | ) | |
| TRUCK & ENGINE GROUP, | ) | |
| TALX UCEXPRESS, INC., | ) | |
| | ) | |
| Appellee-Employer. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE
INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson

---

[1] No brief was filed with this court on behalf of the Appellee-Employer.

[2] We use the names of the claimant and the employer because they appear on the Appellant's Brief. No affirmative request pursuant to Administrative Rule 9(G)(1.2) has been made by the claimant, the employer, or the Review Board. In light of the absence of an affirmative request for continued confidentiality of the identities of the employee and the employer, we fully identify the parties. *See Conklin v. Review Bd. of Ind. Dep't of Workforce Dev*., 966 N.E.2d 761, 762 n.1 (Ind. Ct. App. 2012); *Moore v. Review Bd. of Ind. Dep't of Workforce Dev*., 951 N.E.2d 301, 304-06 (Ind. Ct. App. 2011) (discussing Indiana Administrative Rule 9(G) and Indiana Code section 22-4-19-6 and holding it is appropriate for appellate court to use full names of parties in routine appeals from the Review Board).

**February 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Stephen M. Coil ("Coil") appeals the decision of the Review Board (the "Board" or "Review Board") of the Indiana Department of Workforce Development ("Department") concluding that Coil was ineligible for unemployment insurance benefits for "the week ending December 22, 2012" through the "week ending March 9, 2013." *Coil's Ex*. at 80.[4] Specifically, Coil argues that the Review Board erred in determining that a lump sum amount paid to Coil during the week ending March 2, 2013, and made pursuant to an agreement dated February 11, 2013 ("Agreement"), was "actually severance or dismissal pay" that should be allocated against benefits over a period of weeks instead of just against benefits in the week it was paid.

We reverse and remand.

---

[3] In the caption of Appellant's Brief, Coil cites to Department of Workforce Development Case Numbers 13-08180, 13-R-02656, and 13-R-02657. There are two Administrative Law Judge ("ALJ") decisions in the record before us. One cites to Case Number 13-08180 and the other cites to Case Number 13-10002. *Coil's Ex*. at 47, 78. Both ALJ decisions state that these two cases are being combined together. *Id*. There is, however, only one Review Board decision, and that decision cites to Case Number 13-10002 and 13-R-02656. *Appellee's App*. at 1. Accordingly, this appeal considers only the Review Board's decision bearing the Case Number 13-10002, 13-R-02656. *Id*.

[4] The record before us contains a volume titled, Transcript of a Hearing before an Administrative Law Judge. This volume contains a transcript of the June 26, 2013 hearing before the ALJ and exhibits admitted during the hearing before the ALJ. Those exhibits include documents pertaining to "Case No. 13-08180" and the ALJ decision for that case, as well as documents pertaining to "Case No. 13-10002" and the ALJ decision for that case. The transcript of the ALJ hearing is numbered from page 1 through 11 and will be cited to as *Tr*. The remaining documents, which are numbered 1 through 80, will be cited to as *Coil's Ex*.

**FACTS AND PROCEDURAL HISTORY**

Coil began employment with employer on July 7, 1998 and separated effective December 16, 2012.[5] Coil worked as a development technologist/UAW Chairman for Local 2911 and earned $29.87 per hour, working eight-hour shifts, and five days per week. Coil and other employees were notified that the plant would close its facility on or about December 16, 2012 and move its operations to Illinois. Local 2911 filed a grievance.[6] On February 11, 2013, the union and the employer entered into an agreement regarding the union grievance. Coil provided a copy of the Agreement, which was made part of the record.[7] Members of the union would be paid based on their seniority. The amounts that were paid ranged from $5,000.00 to Coil's receipt of $12,500.00. Coil received one lump sum payment in the gross amount of $12,500.00 during the week ending March 2, 2013.

Coil filed for unemployment benefits, which were denied by a hearing officer. Coil appealed, contending that the lump-sum payment from his employer should be charged against only the week it was received and not, as the hearing officer found, against multiple

---

[5] Coil began working for Truck Engineering and Technical Center, which is also referred to as TDTC, at its Fort Wayne plant on July 7, 1998. While it is not completely clear from the record before us, Appellant's facts suggest that TDTC was initially part of International Harvester. *Appellant's Br*. at 1. TDTC subsequently changed its name to International Truck and Engine, Inc. and that company now appears to be part of Navistar, Inc. *Coil's Ex*. at 75.

[6] The grievance filed by UAW Local 2911 is not included in the record before us.

[7] The document referred to as the Agreement is a "Clarification letter" to the TDTC Phase-down Agreement. The Agreement is in letter form, on Navistar letterhead, addressed to Coil, and is dated February 11, 2013. *Coil's Ex*. at 5. The Agreement is signed by three individuals on behalf of the employer and three individuals on behalf of UAW Local 2911. *Id*. at 7. The TDTC Phase-down Agreement is not in the record before us.

3

weeks of Coil's benefits.[8]  Coil's weekly unemployment benefit amount was $390.00.  The

Administrative Law Judge ("ALJ") held a hearing, at which the employer did not appear

and only Coil testified.

During the hearing, Coil testified that the $12,500.00 did not represent vacation pay,

sick pay, or dismissal pay.  Instead, Coil testified that the payment was deductible income

pursuant to Indiana Code section 22-4-5-1(a)(10).  That section provides that deductible

income includes "Awards by the national labor relations board of additional pay, back pay,

or for loss of employment, or any such payments made under an agreement entered into by

an employer, a union and the National Labor Relations Board."  Without contradiction,

Coil stated that the "[A]greement was negotiated by the union, with the company, to

alleviate the company of any future liabilities regarding EEOC, any discrimination charges,

or future grievances." *Tr*. at 4.  The employer did not appear at the hearing before the ALJ.

The Agreement made no reference to Coil's payment being allocated over a certain

period of time.  The Agreement in pertinent part provided:

> This [A]greement is being entered into as an addendum to the May 17, 2011
> TDTC Phase-down Agreement Clarification letter.
>
>> 1) The UAW Local 2911 members as outlined below who are
>> *on layoff or retirement status* with Navistar, Inc. as of February
>> 1, 2013 will be eligible for the following payment minus
>> applicable taxes:  [Coil was one of the members listed as
>> getting a lump sum of $12,500].
>
> *In exchange for the items as outlined above*, UAW Local 2911 will:
>
> 1) UAW 2911 will not enforce or rely upon its contractual rights and recall

---

[8] The decision of the hearing officer is not in the record before us; instead, there is a decision of a hearing officer that pertains to a different set of facts, yet still bears the Case No. 13-08180. *Coil's Ex*. at 1.

4

rights to any and all work performed in Fort Wayne, Indiana with respect to the following Departments . . . .

2) Of the departments and classifications in these departments outlined above, Navistar, Inc. may retain any UAW Local 2911 members it wishes as a contract/non-represented, permanent employee allowing the Company to directly negotiate an agreement with the individual, even if they are to remain at Navistar, Inc., Fort Wayne, Indiana.

*Coil's Ex.* at 75-77 (emphasis added).

Citing to Indiana Code sections 22-4-15-4(a) (regarding eligibility for benefits in light of "deductible income"), 22-4-5-1 (defining "deductible income"), and 22-4-5-2 (addressing when deductible income is allocated over a period of weeks or just to the week in which it was received), the ALJ concluded:

> The parties entered into an [A]greement dated February 11, 2013. The [A]greement resulted in employees being paid various amounts based on their seniority. The pay ranged from as low as $5,000.00 up to [Coil]'s amount of $15,500.00 [sic].[9]
>
> The payment received by [Coil] was not pursuant to any agreement to which the National Labor Relations Board was a party. Further, it was not made pursuant to the terms and provisions of either the National Labor Relations Act or the Fair Labor Standards Act. Regardless of how [Coil] wished to characterize such payment, the probative evidence demonstrated that the true nature of such payment was actually severance or dismissal pay in connection with a plant closure. If this was a true settlement, everyone would have been paid the same regardless of their seniority, but they were not.
>
> Under Indiana Code [section] 22-4-5-2, [Coil]'s receipt of severance pay will be allocated to the period beginning the week he separated which was the week ending December 22, 2012 through March 2, 2013. There is a carryover of $549.60 into the week ending March 9, 2013 which exceeds [Coil]'s weekly benefit amount of $390. Therefore [Coil] would be ineligible for benefits the week ending March 9, 2013 as well.
>
> The initial determination of the deputy April 29, 2013 is hereby affirmed.

---

[9] The evidence before the ALJ clearly showed that Coil was paid only $12,500.00.

[Coil] received deductible income and therefore his benefits are suspended the weeks ending December 22, 2012 through March 9, 2013.

*Id*. at 80.

The Review Board, without holding a hearing or accepting additional evidence, adopted and incorporated by reference the findings of fact and conclusions thereon of the ALJ and affirmed the ALJ's decision. *Appellee's App*. at 1. Coil now appeals.

**DISCUSSION AND DECISION**

When reviewing a decision by the Board, we must determine whether the decision is reasonable in light of the Board's findings." *Aaron v. Review Bd. of Ind. Dep't of Workforce Dev.*, 726 N.E.2d 880, 884 (Ind. Ct. App. 2000) (citing *Willett v. Review Bd. of Ind. Dep't of Emp't & Training Servs.,* 632 N.E.2d 736, 738 (Ind. Ct. App. 1994), *trans. denied*), *trans. denied*. We may examine only the evidence and reasonable inferences drawn therefrom that would support the Board's decision. *Willett,* 632 N.E.2d at 738. Courts reviewing administrative decisions defer to the agency's findings of fact, provided that the findings are supported by substantial evidence. *Aaron*, 726 N.E.2d at 885 (citing *Briggs v. Review Bd. of Ind. Dep't of Workforce Dev.,* 648 N.E.2d 1225, 1227 (Ind. Ct. App. 1995), *trans. denied*).

We must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which this court may reverse.[10] *Willett,* 632 N.E.2d at 738. The Review Board's decision may be reversed if, after examining the evidence before the Board, reasonable persons would be bound to reach a conclusion different than that reached by the Board. *Id.* "We are not bound by the Review Board's conclusions of law, though '[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.'" *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 122 (Ind. 2012) (quoting *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind. 2000)).

Under Indiana Code section 22-4-15-4, an individual is ineligible for unemployment compensation for any week in which the individual receives income equal to or greater than his benefit amount. This "deductible income" includes, inter alia, vacation pay, pay for idle time, holiday pay, sick pay, dismissal pay, back pay, and payments made under an agreement entered into by employer, a union, and the National Labor Relations Board. Ind. Code § 22-4-5-1(a). A claimant is ineligible for unemployment compensation during any week in which his allocated deductible income is as high, or higher, than his benefit

---

[10] The exceptions, listed in *Willett* are (1) the evidence on which the Review Board based its finding was devoid of probative value, (2) the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis, (3) the result of the hearing before the Review Board was substantially influenced by improper considerations, (4) there was no substantial evidence supporting the findings of the Review Board, (5) the order of the Review Board, its judgment, or finding, is fraudulent, unreasonable, or arbitrary, and (6) the Review Board ignored competent evidence. *Willett v. Review Bd. of Ind. Dep't of Emp't & Training Servs.*, 632 N.E.2d 736, 738 (Ind. Ct. App. 1994) (citing *Blackwell v. Review Bd. of Ind. Dep't of Emp't and Training Servs.*, 560 N.E.2d 674, 677 (Ind. Ct. App. 1990)), *trans. denied.*

amount.  Ind. Code § 22-4-15-4(a).  In the present case, the Board determined that the lump-sum payment received by Coil through the Agreement was severance or dismissal pay allocable from the week ending December 22, 2012 through the week ending March 9, 2013, and therefore, Coil would be ineligible for benefits during that time.

During the ALJ hearing, Coil introduced evidence and testimony that supported the Board's findings that Coil was separated from his employment effective December 16, 2012 (with payment through December 22, 2012), and that, pursuant to the Agreement, he was paid a lump sum of $12,500.00 in the week ending March 2, 2013.  *Tr*. at 5, 6; *Coil's Ex*. at 75.  The Board also found that the payment was best characterized as "severance or dismissal pay in connection with a plant closure."  *Id*.  The evidence in the record before us does not support the Review Board's findings that this payment was severance or dismissal pay.  First, the Agreement made no mention of severance pay or dismissal pay, and the payments were made to designated union members regardless of whether they were on layoff or retirement status.  *Coil's Ex*. at 77.  Second, Coil testified, without contradiction, that the payment was deductible income pursuant to Indiana Code section 22-4-5-1(a)(10) (pertaining to NLRB awards of additional pay, back pay, or for loss of employment, or any such payments made under an agreement entered into by an employer, a union, and the NLRB).  *Tr*. at 8.  Finally, in an e-mail Coil received prior to his hearing, the Department opined that the payments were "back pay," a type of deductible income

described under Indiana Code section 22-4-5-1(a)(10).[11] The evidence before the Review Board was devoid of probative value to find that Coil's payment was severance or dismissal pay. Coil, however, concedes that the $12,500.00 payment constitutes deductible income. We proceed under the assumption that the $12,500,00 payment falls within deductible income described in Indiana Code section 22-4-5-1(a)(10)—a finding that is supported both by Coil's testimony and the Department's e-mail.

An individual is ineligible for unemployment benefits for any week in which the individual receives payments equal to or exceeding the individual's weekly benefit amount in the form of "deductible income." I.C. § 22-4-15-4(a). Therefore, a determination regarding the allocation of a payment is crucial. Coil contends that the Review Board erred in concluding that, as severance or dismissal pay, the payment should be allocated over the weeks ending December 22, 2012 through March 9, 2013.

Here, the Board based its allocation determination upon the incorrect finding that the lump-sum payment was severance or dismissal pay. Notwithstanding that error, this court is not bound by the Board's conclusions of law. *Chrysler Grp.*, 960 N.E.2d at 123. We recognize that an interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight; however, that interpretation must not be inconsistent with the statute itself. *Id.* Indiana Code section 22-4-5-2 sets

---

[11] Coil was not the only one who appealed the denial of unemployment benefits caused by payment under the Agreement. In an e-mail written by the Department's Deputy Commissioner of Field Operations, Dennis A. Wimer ("Wimer"), and dated April 30, 2013, Wimer recognized the "inconsistent nature of how each of these similar cases [was] being handled." *Coil's Ex.* at 53. The e-mail continues by stating that "to rectify that," the Department had determined that the amounts paid to individuals in connection with the Agreement should be treated as "back pay. *Id.* "Awards by the national labor relations board of . . . back pay," are considered deductible income pursuant to Indiana Code section 22-4-5-1(a)(10).

forth rules regarding the allocation of deductible income for the purpose of calculating unemployment benefits. The Review Board cited to only the following portion of subsection (a) of that statute:

> (a) Payments in lieu of a vacation awarded to an employee by an employing unit shall be considered as deductible income in and with respect to the week in which the same is actually paid. The *payment* of accrued vacation pay, dismissal pay, or severance pay to an individual separated from employment by an employing unit *shall be allocated to the period of time for which such payment is made immediately following the date of separation*, and an individual receiving such payments shall not be deemed unemployed with respect to a week during which such allocated deductible income equals or exceeds the weekly benefit amount of his claim.

I.C. § 22-4-5-2(a) (emphasis added). Recognizing that the payment was not made in lieu of a vacation award, the Review Board concluded that the payment must be "allocated to the period beginning the week he separated[,] which was the week ending December 22, 2012 through March 2, 2013."[12] *Coil's Ex*. at 80.

> The language of Indiana Code section 22-4-5-2(a), however, continues:

> Pay for idle time; sick pay; traveling expenses granted to an individual by an employing unit and not fully accounted for by such individual; earnings from self-employment; awards by the National Labor Relations Board of additional pay, back pay, or for loss of employment; or any such payments made under an agreement entered into by an employer, a union, and the National Labor Relations Board; and payments to an employee by an employing unit made pursuant to the terms and provisions of the Fair Labor Standards Act *shall be deemed to constitute deductible income with respect to the week or weeks for which such payments are made. However, if such payments made* pursuant to the provisions of the National Labor Relations Act or of the Fair Labor Standards Act or *through agreement with a union are not, by the terms of the order or agreement under which said payments are made, allocated to any designated week or weeks, then, and in such*

---

[12] Because of a carryover of $549.60, which exceeded Coil's benefits for the week ending March 9, 2013, Coil was also deemed ineligible for benefits for the week ending March 9, 2013. *Coil's Ex*. at 80.

*cases, such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid.*

Coil's $12,500.00 payment was not severance or dismissal pay. The Agreement allocated absolutely no time period for which the payment was made. Therefore, regardless of whether the payment under Indiana Code section 22-4-5-1(a)(10) was an award by the NLRB as back pay (as the Department opined) or was made under an agreement with a union (as Coil contends), the Board should have considered Coil's payment deductible income in and with respect to only the week in which it was actually paid. Reading Indiana Code section 22-4-5-2(a) in its entirety, we conclude that the Board erred in concluding that Coil's $12,500.00 payment should be allocated over a period of weeks. We remand to the Review Board to take actions consistent with this opinion.

Reversed and remanded.[13]

FRIEDLANDER, J., and BAILEY, J., concur.

---

[13] On December 5, 2013, Coil filed a Motion for Appellate Alternative Dispute Resolution. In that motion Coil maintained that, under the Agreement, he was one of twenty-five employees who received a lump sum payment that affected the receipt of unemployment benefits. Coil also stated that for every employee, with the exception of Coil and another employee, the Department had determined that the lump sum payment was deductible in the week paid. A Department representative had testified in agreement with those determinations, but that Coil did not have a Department representative available for examination. Coil's motion is moot in light of our decision today; therefore, we deny his motion in a separate order.